Mr. Weidman. Good afternoon. May it please the court, counsel, and as a brief aside, it's good to see you back again. I believe that the last time I was scheduled to be here, and Mr. Nicolosi was here as well, and you were ill. We're glad to see you back. Thank you. My name is Jay Weidman. I am an assistant appellate defender with the Office of the State Appellate Defender and an attorney for petitioner appellant John Stufflebeam, who asserts that the circuit court was wrong to dismiss the defendant's post-conviction petition at the first stage because the defendant presented the gist of two constitutional claims, that he was deprived of the constitutional right to the effective assistance of counsel. The first being that the trial court erred by advising defendant that the trial court would grant a fitness evaluation on the 119th day so as to toll the statute of, or I'm sorry, so as to stall the speedy trial limitation, which caused the defendant to reject an offer that had been made that day. And secondly, that the trial counsel failed to subpoena DCFS records or to call the defendant's brother to challenge complaining witnesses' reputation for truthfulness. Now, when we're dealing with a first stage dismissal, I believe that there are four what I will call guideposts that help in the analysis that this court must perform. The first is that the standard of review is de novo. The second guidepost is that all the defendant is required to present at this time is the gist of a claim of a deprivation of a constitutional right. In Hodges, the Supreme Court basically asserted that this is a situation where the defendant must show that his claim is arguable even if it is unlikely. The third guidepost is that being that this is a claim of ineffective assistance of counsel, the Strickland standard attaches. So defendant must show that trial counsel's performance fell below an acceptable standard of reasonableness and that the defendant was prejudiced by this. And finally, the fourth thing that must be kept in mind when evaluating a petition at the first stage is that all reasonably pled allegations are to be taken as true. And I think that that's probably an appropriate point to begin the analysis of this case, in part because, at least as to the first argument raised by a defendant regarding the analysis of trial counsel regarding the speedy trial limitation. The state in its brief has conceded that taking these facts as true, it is clear that defense counsel provided deficient advice. And so under the first prong of Strickland, clearly the defendant has met his burden of showing that counsel's performance was below an acceptable standard of reasonableness. Taking the defendant's allegations as true. However, the state then, and especially at page eight of its brief, seems to abandon taking the defendant's allegations as true and challenges them. Where the state says that there is no way that defendant could have possibly believed after the trial court ruled that speedy trial was still an issue. In fact, the trial court ruled that the speedy trial had been told on the 72nd day when the defendant filed the petition seeking a fitness evaluation. And so the state argues at this stage that defendant could not have reasonably believed that he still had an argument to make and therefore could not have rejected the offer that was made on the basis that he thought he still had a good argument under a speedy trial. The first thing that I would say is that this seems to conflate the first and the second stages of review in that it no longer takes what the defendant is saying is true in his allegations that this is what he would have done. Instead, it requires that the defendant show that he has a substantial impairment of a right. But that's not the first stage review. That's second stage review. The second concern that I have about approaching the argument in that way is that it seems to obviate the need for appeals. In that it says the trial court must have been right, defendant must have known that he was right, and at that point stopped believing what trial counsel was telling. But when that conversation was had, didn't defense counsel even agree when the court brought the defendant there, didn't the defense counsel say in open court that he agreed with the judge's... He agreed with the timeline. He agreed that the recitation of facts was correct. I believe the phrase was something along the lines of, as the state has presented it, I think that the timeline is mostly correct. But he disagreed with the effect that the filing of the petition had and to whom the speedy trial delay should be attributed. So while he agreed with the factual presentation, he was disagreeing with the legal analysis and continued to challenge whether or not defendant's speedy trial rights had been told. So in this way, I don't think that we can simply say, well, the court has ruled and so defendant was at that time imputed to have knowledge that in fact he did not have a speedy trial argument. To rule otherwise would suggest that any time a trial court rules, then the defendant shouldn't listen to the advice of his counsel. But every day you sit and hear cases where trial counsel makes a mistake or the trial court makes a mistake. Without that sort of standard, then we're going to change the need for appellate courts. We're also going to change then the duty that a defendant has, or not so much the duty that a defendant has, but the ability that a defendant has to rely upon what he's being told by counsel. And again, it's a factual question. And at this stage, we should not be looking at the factual interpretations here, but taking what the defendant has said as true and correct and viewing it in that way. Because it's a de novo review of a legal question. Well, what the defendant also said in this plea was not that I would have taken the offer, but I would have continued negotiating in that way. He said that he refused to even consider negotiating. It may be that what he said was he refused to negotiate because he thought that he had something that was going to take care of his case. So it was a refusal at that time to consider anything based on what trial counsel had told him. And clearly, that establishes ineffective assistance of counsel and deprivation of a constitutional right. There was a second issue raised by a defendant. Actually, there were several, but there are two that are at issue in the appeal. And that was whether trial counsel failed to subpoena DCFS records that challenged the credibility of the complaining witness, or to use a defendant's brother who had attached an affidavit to the petition. And again, the question is, has he presented an arguable claim, not one that is likely to succeed at that stage. There was an affidavit attached. It was not delusional. And it corresponded with the defendant's best defense, which was to challenge the credibility of the complaining witness. And in this respect, the case is very similar to Hodges, again, the Supreme Court case, which says that the threshold at this stage is simply whether the gist of the claim was presented, one that was not delusional but presented an arguable legal claim regarding the deprivation of a constitutional right. In this instance, the state argues that even if this were available to defense counsel, that the claim that the defendant's brother was making in the affidavit attached to the pro se petition would not have provided admissible evidence in court, in large part because the brother said, I know of a specific instance where the complaining witness lied. And I know that DCFS has rejected his story in the past because he has a reputation of being the teller of tall tales. Now, the state says, well, a single instance is not admissible in court because it has to be a reputation. But the presumption here has to be, and the treatment that is always given to defendants and to the affidavits that they attach, is that they're not legal experts. They don't know the proper way of framing an argument. And the presumption has to be that effective trial counsel would have known how to properly phrase that question. So to the extent that the brother's affidavit may not be admissible in court, or may have alluded to evidence that if improperly phrased would not be admissible, it does demonstrate that with the shaping by an attorney, this would be properly done. And what we're asking for at this stage is that the matter be remanded so that counsel can be appointed and have the opportunity to properly shape the pro se petition and then proceed to the second stage hearing. If there are no further questions, then I would ask that this court reverse the trial court and remand for second stage proceeding. I think so. Thank you, Mr. Whitman. Mr. Nicolosi. Good afternoon, Your Honors. May it please the court. May it please counsel. Counsel was talking about certain guideposts to help guide Your Honor's decision in this. I'm going to give one more, or maybe just a clarification. In determining if a petition is frivolous or patently without merit at the first stage, a trial judge must accept as true all well-pleaded allegations unless those allegations are positively rebutted by the record. In this case, the defendants claim this petition. First claim is that both are ineffective assistance of counsel claims, of course. The first is that counsel misrepresented the speedy trial clock and the issues, and defendant claims that he went to trial because of these misrepresentations. As counsel stated earlier, the state conceded in their brief that any representation that the speedy trial clock was still going when the defendant filed his motion for a psych examination that was deficient. The speedy trial clock is told when a defendant files such a motion. However, as counsel discussed, the Strickland standard applies here. We need to move on to whether or not the defendant was prejudiced and whether he presented in his petition evidence of prejudice. And the people submit that there is no prejudice presented here because the record positively rebuts any claim that the advice given by counsel caused the defendant to go to trial. After the motion to dismiss hearing, counsel filed a motion to dismiss on speedy trial grounds. That was denied by the trial judge. It should have been at that point abundantly clear to the defendant and the counsel that defendant's speedy trial argument did not have a chance of winning. The state presented what defense counsel called a seemingly accurate timeline of events. And Judge Schmidt, you talked with counsel about whether or not he conceded the legal issue. Counsel said he still fought the legal conclusion while still acquiescing to the timeline. People submit that he didn't fight this issue anymore after acquiescing to the timeline. The state presented case law, presented the timeline, and I believe at that point, based on my recollection of the record, which is a while back, I believe the issue was basically done at that point and there wasn't any fighting to go on. And after that, after the arguments, the judge said that the speedy trial clock was told at that point. And at that point, again, it should have been abundantly clear that there was no speedy trial argument at this point. And there's nothing in the petition or the affidavit alleges that counsel ever told defendant that if he goes to trial and loses, that this will be reversed on speedy trial grounds. And even more importantly, counsel never told, it was not alleged, that counsel ever told defendant after the motion to dismiss hearing that the speedy trial argument still had a chance to succeed because counsel knew at that point, based on the transcript of the record at that hearing, counsel knew that the trial judge's ruling was correct. The timeline was correct. The case law was correct. There was no doubt. Oh, he absolutely gave, he gave faulty existence, Your Honor. Absolutely. I'm conceding that point. But I think the timeline here is very important. He gave faulty assistance before the motion to dismiss hearing. After he gave this assistance, the motion for the psychiatric exam was denied. And at that point, I believe that was on the 119th day, it was denied. And counsel told defendant, if he denies this, the speedy trial clock is going to run and we're going to have grounds for motion to dismiss.  So clearly the speedy trial clock is, well, the 120, I guess that didn't matter. I don't know why I just went into that. After he filed his motion to dismiss, oh boy, I just threw myself off track there. How's it going? Oh, that's not my strong suit up here. Yeah, the timeline. Gave faulty advice before the motion to dismiss. And then I think we have to, in considering whether counsel was in effect of assistance based on prejudicing the defendant, I think we need to look at the timeline and the fact something changed between the faulty advice and defendant's decision to go to trial and not be guilty. What happened in the meantime there is critical. In the meantime, counsel and defendant learned clearly that there was no speedy trial issue anymore. The speedy trial clock told at 72 days when defendant filed the motion for psych exam. And I don't believe that a defendant can be prejudiced when he had all this information. Once he knew that the speedy trial argument was dead, he still could have taken the plea. I believe it's his affidavit, could have been his petition. He stated, and at this stage we need to accept that as true, because that's not rebutted by the record. He said, defendant said this plea was still on the table. Well, if he wanted the plea, that's what he's arguing he wanted to do, he could have taken it at that point. He knew his speedy trial argument was dead. If this plea is still on the table or further negotiations, which is what he wanted, that's still on the table. He should have taken it. He knew that the speedy trial issue was dead, should have taken the plea. Can't claim prejudice because he wasn't forced to go to trial. The second part of defendant's ineffective assistance claim, he claims that counsel, there's an arguable claim that counsel was ineffective for failing to call defendant's brother and to subpoena DCFS reports supporting a claim regarding the victim's reputation for truthfulness. Regarding the brother, the brother's affidavit stated that the victim was, quote, known to lie, and gave a specific example of when he crashed his bike and told his teacher that his father beat him. The people submit that this was, that the record rebuts this claim because the brother said in his affidavit that he consulted with counsel prior to the trial, consulted with counsel and discussed these issues. Therefore, the only conclusion we could come to is that counsel knew of this testimony, this potential testimony, and he chose not to call the defendant's brother. That's trial strategy. And those types of decisions, of course, are unassailable. That's strategy. He knew of it, chose not to do it. That can't be, that's strategy. And moving on to the DCFS documents, the record is clear here that counsel requested those documents. On page 118 of the transcript, counsel stated that he requested these documents. The state later, I don't know if that was at the same hearing, but the state later said that they gave the defense, quote, everything I have. Later, at that same hearing, the judge continued the matter for the parties to work out any further discovery issues. And then, I believe it was four or five months later in September, the judge asked, as a kind of a preliminary matter, he said, are discovery matters taken care of? And then defense counsel said, there are no issues that I'm aware of. Based on that statement, the people would submit that counsel's response that there were no discovery issues that he was aware of that's clear. There's really no possible way that counsel could have forgot about these documents or lost interest in these documents. I believe based on that evidence in the record that the record rebuts defendant's claim that counsel was ineffective for failing to present or subpoena this particular evidence. People submit that the trial judge's dismissal at the first stage of the petition was proper. And with that, if there are any other questions, I'd be happy to answer them. All right. Thank you very much. Mr. Wegman? Let me ask you a question. Let's say, if I agree with you or the court agrees with you on, hypothetically, just issue number one. What's the relief? The relief is to proceed to the second stage. Okay. And let's say everybody agrees and you win. Ultimately, you win on that issue. So now, then what happens to the trial court? I mean, is the state required then to offer them that 14 years again? The state is not required to. He says, I'll take that 14 years. And they say, oh, no you won't because it's gone. Well, let's talk about it. Okay, 28 years. Well, that's what the trial judge gave you. And that's what we're offering. Then what do you do? He says, well, I don't know. Well, the state says, oh, we'll agree to 30 years. At least if I got 28 from the judge. Then what happens? It's an opportunity for both sides. And it's a judgment call for both sides. But if there is no negotiation, what happens after that? Then it proceeds to a new trial. So you go to a new trial, even though there was no trial error in the first trial. You're just talking about he would have maybe taken this thing. What would be the purpose of trying the case again? You're not saying he was convicted because of trial error. I mean, does that make any sense that you'd get a new trial because of this pre-trial thing that had nothing to do with the trial itself? Well, the same considerations are at play for both sides of that state. You have the state looking at the risk. Obviously, it was worth something to the state to offer a term of years that was less than the maximum. In fact, it was very close to the minimum. And for a defendant, there's the same risk in rejecting that that he would have at that time. But the case law is clear that while neither side is obligated to pursue any negotiation, each side should be given that opportunity that was denied to the defendant by the Court Advisory Council. I'm just having a hard time logically making that leap that why you would have to put everybody through a new trial when the reversal had nothing to do with trial error but pre-trial negotiations. I just have a hard time with that. And it's really not the issue before us now, but I thought maybe you could shed some light on it. I wish that I could, and I think that it's the same, perhaps, conundrum that the trial court was expressing. If I'm reading the trial court's comments right, when the trial court said there is no requirement that there be any sort of negotiation. Now, that could have pertained to the trial judge's perception of what had happened at trial. But it could also be a statement about if I send it back, the state doesn't have to make that offer again. And so I think that the trial court may have been wrestling with the same concern. But I think that part of the reason why it should go back for a second stage proceeding is that it's getting somewhat ahead of the question. And that's true for both sides as well. The state certainly has an interest in discussing this at the second stage in terms of whether it should proceed past that. And defendant has an interest in seeing that counsel have an opportunity to address that issue. And perhaps to reshape the second issue or the first to phrase it in ways that account for some of the concerns that the state has raised. But I stepped up here initially just to say that there is nothing in the record that positively rebuts either of the claims. There may be things that suggest arguments and counsel I think has made some very good arguments today. But they're factual arguments that again go against where we should be at the first stage. Which is to take those facts as true. The defendant made a decision not to continue negotiations because of the misadvice of counsel, which is admittedly deficient. Because of that, defendant deserves an opportunity for a remand for a second stage proceeding. And at that point try to sort out how things should go from there. If there are no further questions. One thing, and that's the thing about he made the statement to continue negotiations. The state's got no duty to negotiate. In other words, they say hey we'll offer you 14 years. And he says, how about 12? They said no. Well then the offer's off the table. Contract law offer, it's rejected. And he said okay, well I'll take the 14. They said no. The 14's not available anymore. You rejected it. Gone. Let's go to trial. The state had no duty to negotiate with him at all. And he didn't say I would take the 14. I would have taken the 14 but for the bad advice. He said I'd continue to negotiate. Is there a difference? I'm not certain that there is a difference. Because his determination to not do anything further was based upon the misadvice of counsel. Thank you. Thank you. Thank you both today for your arguments. We will take this matter under advisement. Back to you with a written disposition within a recess for a panel.